## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WILLIAM M. HAID**<br>Cos Cob, CT 06807<br><br>                              Plaintiff,<br><br>                    v.<br><br>**CABLEVISION LIGHTPATH, LLC**<br>1111 Stewart Avenue<br>Bethpage, NY 11714<br><br>**CABLEVISION LIGHTPATH, INC.**<br>1111 Stewart Avenue<br>Bethpage, NY 11714<br><br>**ALTICE USA**<br>1 Court Square<br>Long Island City, NY 11101<br><br>                              Defendants. | JURY TRIAL DEMANDED |

## **COMPLAINT**

## I.   **INTRODUCTION**

Plaintiff, William M. Haid, brings this action against his former employers, Cablevision Lightpath, LLC, Cablevision Lightpath, Inc., and Altice USA (collectively "Defendants"), for discriminating against Plaintiff because of his age, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL").

Plaintiff seeks damages, including economic loss, compensatory damages, punitive damages, costs and attorney's fees, and all other relief this Court deems appropriate.

## II.   **PARTIES**

1.   Plaintiff, William M. Haid, is an individual and a citizen of the State of Connecticut. Plaintiff resides in Cos Cob, CT.

2.   Plaintiff was born in 1958.

3.   As of Plaintiff's October 2022 termination from Defendants, Plaintiff was sixty-four

(64) years old.

4.      Defendant Cablevision Lightpath, Inc. is a Delaware corporation which maintains a principal place of business located at 1111 Stewart Avenue, Bethpage, NY 11714.

5.      Defendant Cablevision Lightpath, Inc. is engaged in an industry affecting interstate commerce and regularly does business in New York State.

6.      Defendant Cablevision Lightpath, LLC is a Delaware corporation which maintains a principal place of business located at 1111 Stewart Avenue, Bethpage, NY 11714.

7.      Defendant Cablevision Lightpath, LLC is engaged in an industry affecting interstate commerce and regularly does business in New York State.

8.      Defendant Altice USA is a Delaware corporation which maintains a principal place of business located at 1 Court Square, Long Island City, NY 11101.

9.      Defendant Altice USA is engaged in an industry affecting interstate commerce and regularly does business in New York State.

10.      Defendants collectively maintain and operate offices located in New York and within the Southern District of New York judicial district, including offices at 1 Court Square, Long Island City, NY 11101, 1111 Stewart Avenue, Bethpage, NY 11714, and 565 Taxter Road, Elmsford, NY 10523.

11.      Defendants collectively presented themselves as a single company such that third parties dealt with them as one unit.

12.      In connection with Plaintiff's employment with Defendants, Plaintiff received paystubs and tax forms from both, Defendant Cablevision Lightpath, Inc. and Defendant Cablevision Lightpath, LLC.

13.      In connection with Plaintiff's employment with Defendants, Plaintiff entered into agreements with Defendants, including with Defendant Altice USA.

14.     Upon Plaintiff's termination from Defendants, Plaintiff received termination of employment information paperwork from Defendants, including paperwork from Defendant Altice USA.

15.     Defendant Cablevision Lightpath, Inc., Defendant Cablevision Lightpath, LLC, and Defendant Altice USA share, *inter alia*, common ownership, office locations, personnel policies and employment practices.

16.     Defendant Altice USA is a majority owner of Defendant Cablevision Lightpath, Inc.

17.     Defendant Altice USA is a majority owner of Defendant Cablevision Lightpath, LLC.

18.     Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the unlawful actions complained of herein.

19.     At all relevant times, Plaintiff primarily worked at Defendants' offices located in Elmsford, NY and Bethpage, NY.

20.     At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

21.     At all relevant times, Defendants acted as employers within the meanings of the statutes which form the basis of this matter.

22.     At all relevant times, Plaintiff was an employee of Defendants within the meanings of the statutes which form the basis of this matter.

## III.     JURISDICTION AND VENUE

23.     The causes of action which form the basis of this matter arise under ADEA and the NYSHRL.

24.     The District Court has jurisdiction over Count I (ADEA) pursuant to 28 U.S.C. §1331

3

and 28 U.S.C. §1332.

25.     The District Court has supplemental jurisdiction over Count II (NYSHRL) pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1367.

26.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

27.     On or about December 8, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC complaint (with personal identifying information redacted).

28.     On or about May 16, 2023, the EEOC issued to Plaintiff a Notice of Rights pertaining to Plaintiff's agency complaint.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

29.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    <u>FACTUAL ALLEGATIONS</u>

30.     Plaintiff was hired by Defendants' predecessor on or about August 27, 2001.

31.     Plaintiff last held the position of Sales Director.

32.     Plaintiff last reported to Mike Ocuto ("Ocuto")(45[a]), Vice President, Sales.

33.     Ocuto reported to Doug Turtz ("Turtz") (48), Senior Vice President, Sales.

34.     Turtz reported to Doug Dalissandro ("Dalissandro") (57), Chief Revenue Officer.

35.     Dalissandro reported to Christopher Morley ("Morley") (48), Chief Executive Officer.

36.     The day after Plaintiff's sixty-fourth (64th) birthday, Defendants terminated Plaintiff's employment because of his age.

37.     When Plaintiff was terminated, Defendants retained less qualified, substantially

---

[a] All ages herein are approximations as of Plaintiff's termination.

younger employees.

38.     Plaintiff was more qualified for those positions in which Defendants retained younger employees.

39.     Defendants replaced Plaintiff with a less qualified, substantially younger employee.

40.     When Plaintiff was terminated, he was age sixty-four (64) with more than twenty-one (21) years of service at Defendants.

41.     During Plaintiff's employment at Defendants, he consistently demonstrated positive performance and dedication.

42.     Plaintiff performed his duties in a highly-competent manner.

43.     In or around 2015, Plaintiff began reporting to Ocuto.

44.     Ocuto had no role in Plaintiff being hired at Defendants.

45.     Plaintiff was the oldest employee reporting to Ocuto.

46.     At the time of Plaintiff's termination, the following employees reported to Ocuto.

        a) Rich Pikul ("Pikul") (36), Sales Director;

        b) Patrick Maris ("Maris") (36), Sales Director;

        c) Robert Weinstein ("Weinstein") (48), Sales Director; and

        d) Ken Costello ("Costello") (48), Sales Director.

47.     Plaintiff was qualified for each of these four (4) positions held by the other, substantially younger employees reporting to Ocuto.

48.     Upon information and belief, Plaintiff was more qualified for some, if not all, of these other four (4) positions reporting to Ocuto, compared to the substantially younger employees holding those roles.

49.     In January 2021, Dalissandro became Plaintiff's third level supervisor.

50.     In or around January 2021, Defendants hired Weinstein (48).

51.     In or around February 2021, Defendants hired Josh Marksberry ("Marksberry") (39), Agent Manager.

52.     In or around March 2021, Defendants hired Ryan Sullivan ("Sullivan") (50), Agent Manager.

53.     On October 12, 2022, Plaintiff turned age sixty-four (64).

54.     On October 13, 2022, in a meeting with Ocuto and Turtz in person, and Karen Miles ("Miles") (48), Human Resources, on the phone, Defendants terminated Plaintiff's employment, effective October 14, 2022.

55.     Defendants' stated reason for Plaintiff's termination was that Defendants decided to go in a different direction.

56.     Plaintiff received no explanation, including the selection criteria, as to why he, in particular, was terminated, as opposed to the substantially younger employees who were retained.

57.     Plaintiff was the only employee reporting to Ocuto who was terminated effective October 14, 2022.

58.     When Plaintiff was terminated, he was at ninety-three percent (93%) of his quota for 2022.

59.     When Plaintiff was terminated, he was ranked fourth (4th) out of eleven (11) Sales Director employees at Defendants.

60.     In 2022, Plaintiff had doubled monthly sales from 2020, and billing revenue was up nine point one percent (9.1%) through August 1, 2022, for an annual increase of fifteen point six percent (15.6%).

61.     While employed at Defendants, Plaintiff received eleven (11) President Club trophies for exceeding his quota.

62.     Plaintiff had no opportunity to remain employment with Defendants.

63.     Defendants retained substantially younger employees in positions for which Plaintiff was qualified, if not more qualified, when he was terminated.

64.     Defendants terminated Plaintiff's employment because of his age.

65.     Defendants replaced Plaintiff with James Davern ("Davern") (54), Agent Manager.

66.     Davern had previously reported to Plaintiff.

67.     Davern had less years of service at Defendants as compared to Plaintiff.

68.     Plaintiff was more qualified to perform his job duties and responsibilities than the substantially younger, less experienced employee with whom Defendants replaced him.

69.     Plaintiff had no performance or disciplinary issues throughout his employment.

70.     While employed at Defendants, Plaintiff was not issued a write up, performance improvement plan, or any other corrective action.

71.     Defendants' age discriminatory conduct has caused Plaintiff emotional distress.

72.     Defendants retained all other employees, including substantially younger, less experienced employees.

73.     Plaintiff's age was a motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including terminating his employment.

74.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

75.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

76.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected

rights. The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages.

77.    Defendants' actions amount to recklessness or willful or wanton negligence, demonstrating a conscious disregard for the rights of Plaintiff and others, or constitute conduct so reckless as to amount to such disregard.

## COUNT I – ADEA

78.    Plaintiff incorporates herein by reference the above paragraphs, as if set forth herein in their entirety.

79.     By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the ADEA.

80.    As a direct and proximate result of Defendants' violation of ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

81.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

82.    No previous application has been made for the relief requested herein.

## COUNT II – NYSHRL

83.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

84.    By committing the foregoing acts of discrimination, Defendants have violated the NYSHRL.

85.    As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

86.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

87.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

(a)     declaring the acts and practices complained of herein to be in violation of ADEA and the NYSHRL;

(b)     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(c)     enjoining and restraining permanently the violations alleged herein;

(d)      awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory conduct;

(e)     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(f)     awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(g)     awarding punitive damages to Plaintiff under the NYSHRL;

(h)     awarding Plaintiff such other damages as are appropriate under ADEA and the NYSHRL; and

(i)     granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Dated: <u>08/11/2023</u>          BY:   <u>*s/ Kevin Console*</u>
                                    KEVIN CONSOLE, ESQUIRE
                                    5 Penn Plaza, 23rd Floor
                                    New York, NY 10001
                                    kevinconsole@consolelaw.com

                                    *Attorney for Plaintiff, William M. Haid*